## Thomas McFeely, Plff. in Err., *v.* William A. Little.

If one who makes a sale as agent is the agent of the vendor, and, in fact,
in making the sale makes false representations and commits acts of deceit,
the principal is chargeable with the consequences.

An affidavit of defense which set up as a defense the fraud of one who
represented himself to be the agent of the plaintiff in making the sale of
the real estate, for the balance of the purchase money of which the suit
was brought, alleged that another agent of the plaintiff had first brought
the plaintiff and defendant together, and that the plaintiff acquiesced in all
that the latter agent and the person who made the false representations
had done in effecting the sale, and signified such acquiescence by accepting
the defendant as a purchaser, receiving a part of the purchase money, and
a note for the balance in suit and in making a deed to the defendant; the
affidavit further averred that the deponent was advised by his counsel that
these facts constituted the party making the fraudulent representations the
agent of the plaintiff, and that the deponent therefore avers that he was
such agent, all of which facts he expects to be able to prove on the trial.

NOTE.—Where the agent has acted within the apparent scope of his authority, the principal is bound by his fraudulent acts. McDonald v. Todd,
1 Grant Cas. 17; Independent Bldg. & L. Asso. v. Real Estate Title Co. 156
Pa. 181, 27 Atl. 62; De Turck v. Matz, 180 Pa. 347, 36 Atl. 861. But the
rule is otherwise, where the act was not within the apparent scope of his
authority, and is not ratified. Custar v. Titusville Gas & Water Co. 63
Pa. 381. But the wrongful conduct may be ratified by accepting the benefits. Wheeler & W. Mfg. Co. v. Aughey, 144 Pa. 398, 27 Am. St. Rep. 638,
22 Atl. 876.

*Held*, that although meager, they were sufficient averments of the agency and, with the allegations of fraud, they would prevent judgment and send the case to the jury.

(Argued January 7, 1887. Decided January 31, 1887.)

January Term, 1886, No. 224, before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, and GREEN, JJ. Error to Common Pleas No. 1 of Philadelphia County to review a judgment for plaintiff for want of a sufficient affidavit of defense in an action of debt. Reversed.

The instrument in writing sued upon was as follows:

"On or before the thirteenth day of October, 1883, I bind myself and my heirs to pay to William A. Little, coms'r, and attorney for the owners of the Gold Flat Tract of land in Spottsylvania county, Virginia, three thousand dollars, with interest from the thirteenth day of October, 1881, till paid. It being for balance of the purchase money for said Gold Flat Tract of land; and I hereby waive all exemptions as to this liability.

"Witness my hand and seal this twelfth day of October, 1882.

"Thomas McFeely." [Seal.]

. To which counsel, in filing, added the following

"Credit is given upon this note for $1,385, paid December 19, 1884, and interest has been paid, or is allowed from 13th October, 1881, to 13th October, 1882."

The defendant filed an affidavit of defense as follows:

"Thomas McFeely, the above-named defendant, being duly sworn according to law, doth depose and say that he has a just and good defense to the whole of plaintiff's claim in the above case of the following nature and character, to wit: the instrument on which this suit is brought was executed and delivered by deponent to the said William A. Little, as agent and attorney for John Lewis and others, the owners of a 600-acre tract of land known as the Gold Flat Tract, situate in Spottsylvania county, Virginia, as an evidence of the indebtedness of deponent to them for the balance of the purchase money for said tract of land, deponent having purchased the same on the 12th day of

October, A. D. 1882, for the price or sum of $5,000. Of said amount deponent paid in cash at the time of the delivery to him of the deed therefor the sum of $2,000, and for the balance gave the instrument on which this suit is brought, securing the same by the execution and delivery by deponent of a deed of trust of said tract of land to John F. Goolrich, as trustee and agent for the said John Lewis and others, the former owners thereof. By the terms of the said deed of trust the said John F. Goolrich, on the default of the deponent to pay said indebtedness when due, was authorized to sell the said tract of land at public sale and apply the proceeds thereof to the discharge of said indebtedness, and the deponent avers that he is informed, believes, and expects to prove, that the said Goolrich, as the trustee under said deed for the former owners of said land, has since sold said land at public sale for the benefit of the former owners of the same.

"Prior to the purchase of said tract of land, to wit, in April, 1882, deponent, while in the office of one Daniel Breed, in Washington, D. C., was introduced to one G. W. Kirk, who represented to him that he, G. W. Kirk, his brother, S. S. Kirk, William Robinson, B. F. Janney, and the said Daniel Breed, were the lessees for a year from October, 1881, of the aforesaid tract of land, as also the agents of the owners thereof for the sale of the same at the price or sum of $5,000. At this time, also, the said G. W. Kirk represented to deponent that the land was rich in gold quartz, as well as in surface gold. At various times prior to the purchase of the said land by deponent, copies of six assays of ore were shown, which he told deponent had been taken from an 8-foot vein of ore on said land, commencing at the distance of some 8 feet below the surface. The lowest of said assays gave $40 of gold per sample ton of said ore after smelting the same, and the highest gave $454 of free gold per ton of said ore. All of these assays the said Kirk told deponent had been made by one Holmes, an expert assayer, at the time in the employ of the United States government. Finally, at the solicitation of the said Kirk, who was recommended to him by said Daniel Breed as an honest prospector and expert gold miner, deponent visited the said land three different times, twice in company with the said G. W. Kirk and once with S. S. Kirk. While on one of the visits with G. W. Kirk, a man by name of Dixon, in the employ of said Kirk, dug up some dirt and gravel out of the pits or trenches in which he had been digging, and the

said G. W. Kirk, having taken said dirt and washed or panned it in deponent's presence, showed him pieces of gold therein. There were several of these washings or pans, by said G. W. Kirk, of dirt taken from the pits on said land, and in each pan or washing he showed gold to deponent. The said G. W. Kirk also pointed out to deponent on said land an opening 6 or 8 feet deep, out of which, he said, had been taken the ore, from which the assays mentioned were made. After the purchase of the said land, the said vein of ore was inspected and tested by deponent, and by his agent I. F. Munson, and it was discovered that the same was not rich in gold quartz and surface gold, as represented to deponent by the said Kirk, but that said representations were false, as also were his representations that the assays mentioned were made from ore taken from said tract of land.

"Deponent avers that the representations thus made, and the assays shown to him by said Kirk, not only were false, but also that at the time he, the said Kirk, knew them to be false, and that they were made and shown by him to deponent, for the purpose of deceiving the latter as to the character and value of the land in question, and of inducing the deponent to purchase the same for the price or sum of $5,000.

"Deponent further avers that he is informed, believes, and expects to prove, that the said several pans or washings of dirt by the said Kirk in his, deponent's presence, were salted by him, the said Kirk; and that he, the said Kirk, had gold in his mouth, which, at the time, he dropped into each pan or washing; and that the pieces of gold which he gave to deponent, and told him were found by him, the said Kirk, in the surface washings from this tract, were not so found, but were obtained by him, the said Kirk, from an entirely different place.

"And further, deponent avers that the said 600-acre tract of land is not now, and was not at the time of the purchase thereof by him, worth the amount of the cash payment made by him at the time of the delivery of the deed therefor to him, and that there has been an utter failure of the consideration for which the instrument in suit was given. All of which deponent believes to be true, and expects to be able to prove on the trial of this case."

A supplemental affidavit of defense alleged "that not only did said G. W. Kirk represent to deponent that he, his brother,

S. S. Kirk, and others, were the agents of the owners of the Gold Flat Tract of land for the sale of same for the sum of $5,000 as set forth in deponent's original affidavit of defense, but that the subsequent acts of said Kirk, and the statements made by S. S. Kirk in the presence of the plaintiff, at and immediately before the giving of the note in suit, show as a fact that said S. S. Kirk was such agent and was so recognized by the plaintiff.

"The acts and statements above adverted to are as follows:

"After the happening of deponent's dealings with said G. W. and S. S. Kirk, as detailed in his original affidavit of defense, deponent, in accordance with a request made by said S. S. Kirk, went to Fredericksburg, Virginia, to there meet him, said Kirk, and the plaintiff, and consummate the purchase of said lands as negotiated by and through said Messrs. Kirk.

"Deponent was there introduced by said S. S. Kirk to the plaintiff, who was admittedly, as by the note in suit, the attorney for the owners, at which interview, he (Kirk) told the plaintiff that he had found him a party, naming deponent, to purchase the Gold Flat Tract for $5,000.    The terms proposed were stated; the action of said Kirk in negotiating said sale for the owners, with deponent, were ratified and approved, and the terms of sale accepted·by said plaintiff, and the contract of purchase was consummated, as detailed in the original affidavit of defense filed in this cause.

"Deponent never sought said Kirk nor anyone to secure said land for him, but on the contrary, said Kirk first approached deponent, offered the land to him, and solicited him to buy the same, took him upon the tract, and negotiated the sale and the terms of same.    Said S. S. Kirk first brought him into personal contact with the plaintiff, who acquiesced in all that said Kirk and his brother had done in effecting said sale, and signified such acquiescence by accepting deponent as a purchaser, receiving the $2,000 paid on account of the consideration money, as also the note in suit, and procuring, and actually joining with the owners, in the deed of said land to deponent.

"The facts as herein, and in deponent's original affidavit, set forth, are sufficient, as deponent is advised by counsel, to constitute said Kirks, in fact and in law, the agents of the owners for the sale of said tract, and he therefore avers that they were such agents.

"All of which facts deponent says are true to the best of his

knowledge, information, and belief, and he expects to be able to prove the same on the trial of above cause."

The plaintiff took a rule to show cause why judgment should not be entered for want of a sufficient affidavit of defense, which the court made absolute and entered judgment for the plaintiff.

The assignments of error specified the action of the court in making absolute the rule, in not discharging the rule, and in entering judgment.

*Edward L. Perkins,* for plaintiff in error.—The liability of B for the fraud of A, of which he is ignorant, may be established in the following classes of cases:

1. Where A is the agent of B for the purposes of the act in which the fraud is committed. In this case A's liability is unlimited. Udell v. Atherton, 7 Hurlst. & N. 172, following Moens v. Heyworth, 10 Mees. & W. 157; Wilson v. Fuller, 3 Q. B. 77; Mackay v. Commercial Bank, L. R. 5 P. C. 394; Barwick v. English Joint Stock Bank, L. R. 2 Exch. 259; Oakes v. Turquand, L. R. 2 H. L. 325.

2. Where A is the agent of B, but not authorized to do the act in which the fraud was committed. The extension of the principle to this class was gradual, first being extended to those instances where the agent's authority for the act was doubtful, and then to those in which there was no authority. It would be unfair to make the principal liable in these cases, unless he had enjoyed the benefits of the fraud. Accordingly we find the liability thus limited. Lynch v. Mercantile Trust Co. 5 McCrary, 623, 18 Fed. 486; Horter v. Silliman, 3 W. N. C. 405; Jones v. National Bldg. Asso. 94 Pa. 215; Mundorff v. Wickersham, 63 Pa. 87, 3 Am. Rep. 531; Owings v. Hull, 9 Pet. 607, 9 L. ed. 246; People's Bank v. Manufacturers' Nat. Bank, 101 U. S. 183, 25 L. ed. 908.

3. Where A is not the agent of B, but represents himself to be so and B accepts the act. 2 Greenl. Ev. § 66, p. 56; Peters v. Ballistier, 3 Pick. 495; Kupfer v. Augusta, 12 Mass. 185.

One who voluntarily accepts the proceeds of an act done by one assuming, without authority, to be his agent, ratifies the act and takes it to be his own, with all its burdens as well as its benefits. Waterson v. Rogers, 21 Kan. 529; Story, Agency, § 253, and cases cited.

Those cases which lay stress upon the necessity of a knowledge

of all the material circumstances, in order that there may be a binding ratification, will be found to be cases in which, so far from receiving any benefit, the principal has only been injured by some tortious unauthorized act of an agent, in which case of course he should not be made liable for the wrong unless he ratified it with a knowledge of the facts of the case, for it is not to be presumed that he would ratify an unauthorized act from which he can receive nothing but harm. Such cases are: Moore v. Patterson, 28 Pa. 505; Pittsburgh & S. R. Co. v. Gazzam, 32 Pa. 340.

It has been attempted to distinguish cases where the principal adopts the acts of an unauthorized agent from the adoption of the acts of a stranger, on the ground that in the former the agent has been accredited by the principal, and that therefore the principal must suffer, while in the latter the agent has not been so accredited, and that the principal is not therefore bound. Some *dicta* in Mundorff v. Wickersham, 63 Pa. 87, 3 Am. Rep. 531, appear to tend to this point.

This distinction, however, does not exist. The moment the principal accepts the sale made by a stranger, he accredits him just as much as if the sale had been previously authorized, and having once accredited him, he is liable for his misdeeds done in the transaction, for which he had thus constituted him his agent. Fuller v. Wilson, 3 Q. B. 58.

Where a ratification is established as to part it operates as a confirmation of the whole of that particular transaction of the agent. Story, Agency, § 250; Billon v. Hyde, 1 Atk. 126; Hovil v. Pack, 7 East, 164; Farmers' Loan & T. Co. v. Walworth, 1 N. Y. 433; Menkens v. Watson, 27 Mo. 163; Southern Exp. Co. v. Palmer, 48 Ga. 85; Fort v. Coker, 11 Heisk. 579; Seago v. Martin, 6 Heisk. 308; Burgess v. Harris, 47 Vt. 322.

While it is a general rule that a ratification to be binding upon a principal must be made upon full knowledge of all the material facts (Pittsburgh & S. R. Co. v. Gazzam, 32 Pa. 340), yet a distinction exists between an express and an implied ratification.

Where the principal says nothing, but adopts the act of another and accepts the benefit of his fraud, the ratification is unqualified, and the principal stands as if the person whose act he adopts had been authorized *ab initio*. Fowler v. Trull, 1 Hun, 409.

There is a failure of consideration, which in most states has been held to be a good defense to an action on a note. Shephard v. Temple, 3 N. H. 455; Gamble v. Grimes, 2 Ind. 392; Morgan v. Fallenstein, 27 Ill. 31; Black v. Ridgway, 131 Mass. 80; Sawyer v. Chambers, 44 Barb. 42; Wyckoff v. Runyon, 33 N. J. L. 107.

A breach of warranty amounting to a partial failure of the consideration of a note given for the goods has been held to be a good defense *pro tanto.* Payne v. Cutler, 13 Wend. 605; Butler v. Titus, 13 Wis. 479.

It is true that the deed of trust was practically a mortgage, and that a mortgagee has a right to his remedies concurrently. The case of Wing v. Hayford, 124 Mass. 249, expressly states, however, that when there has been a sale under a deed of trust given to secure a note, if the proceeds of the sale are insufficient to pay the debt, there may be judgment for the balance after deducting the proceeds of sale.

This impliedly, at least, restricts the plaintiff in this case to an action for the balance due after proof of what that balance, if any, really is.

*Joseph De F. Junkin,* for defendant in error.—The attempt is made near the end of the affidavit to connect Little with G. W. Kirk by alleging that he acquiesced "in all that Kirk and his brother had done in effecting said sale," by the further allegation that Little "signified such acquiescence by accepting deponent as a purchaser, receiving the $2,000 paid on account, and the note in suit;" or, in other words, that the only acquiescence was the legal inference from his agreeing to the sale.

It would be stretching the doctrine as to ratification to a length beyond conception to hold that the owner of property is responsible to the purchaser for the representations of everyone in the world who may have volunteered information as to such property to such purchaser, and by reason of which he alleges he was induced to purchase.

The person ratifying must have had knowledge of all essential facts; for otherwise the ratification, though applicable to an assumed condition, is not applicable to that claimed to be ratified. Wharton, Agency, § 65.

Lester v. Kinne, 37 Conn. 9, more closely resembles the present one than any case which has been found upon this subject.

Where the agency is to be proved by the subsequent ratification and adoption of the act by the principal, there must be evidence of previous knowledge, on the part of the principal, of all the material facts. 2 Greenl. Ev. § 66; Herring v. Skaggs, 73. Ala. 446.

Ratification is in the nature of a contract; it is the adoption of and assent to be bound by the act of another. There can be no ratification unless there is previous knowledge of all the facts. and circumstances attending the act to be ratified. Story, Agency, 239; Hovey v. Brown, 59 N. H. 114; Thompson v. Craig, 16 Abb. Pr. N. S. 29; Kerr v. Sharp, 83 Ill. 199.

OPINION BY MR. JUSTICE GREEN:

The supplemental affidavit does contain the averment, near its conclusion, that both the Kirks were the agents of the owners of the land in effecting its sale to the defendant. The original affidavit alleges that G. W. Kirk represented to defendant that he and his brother, S. S. Kirk, together with others, were agents for the owners for the sale of the land at $5,000, and that the defendant at the solicitation of G. W. Kirk visited the land twice with G. W. Kirk and once with S. S. Kirk; that is, that the visit with S. S. Kirk was by the solicitation of G. W. Kirk.

Then the supplemental affidavit avers that the subsequent acts of G. W. Kirk and the statements made by S. S. Kirk in the presence of the plaintiff show that as a fact S. S. Kirk was such. agent and was so recognized by the plaintiff, and proceeds to describe those acts and statements. Substantially they are that defendant by the request of S. S. Kirk went to Virginia to meet. him and the plaintiff and consummate the sale as negotiated by both the Kirks; that he, the defendant, was there introduced by S. S. Kirk to the plaintiff, the terms of sale were stated, the action of "said Kirk" (which here means S. S. Kirk) in negotiating the sale for the owners was approved and ratified, the terms. accepted and the contract consummated.

Next follows an averment that said S. S. Kirk first brought defendant into personal contact with the plaintiff, "who acquiesced in all that said Kirk and his brother had done in effecting said sale."

This averment of acquiescence is rather general, and we would. not be at liberty to infer from it that the false representations. and acts of deceit alleged in the original affidavit to have been.

made and done by G. W. Kirk were repeated to, or in the presence of, the plaintiff, and approved by him. But that is probably not necessary for the purposes of an affidavit of defense. If the person who made the sale as agent was the agent of the vendor, and in fact in making the sale did make the false representations in question and commit the acts of deceit mentioned,. the principal, as we understand the decisions, would be chargeable with the consequences. The point here however is whether the connection of agent and principal as between G. W. Kirk and the plaintiff is sufficiently averred. It must be confessed that. such averment is somewhat meager and not as distinct as it might be. But, taking the two affidavits together, we think they comprise such an allegation, in substance; and, with some hesitation, we think the defendant is entitled to be heard by a jury upon the facts set up in defense. We decide nothing more than this.

Judgment reversed and *procedendo* awarded.